**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **DAVID NAPPIER**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Cause No. |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |
| **STONEGATE MORTGAGE CORPORATION**, and | ) |
| | ) |
| **HOME POINT FINANCIAL CORPORATION**, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

**COMES NOW** Plaintiff David Nappier ("**Nappier**" or "**Plaintiff**"), by and through his undersigned counsel, and for his Complaint against Defendants Stonegate Mortgage Corporation ("**Stonegate**") and Home Point Financial Corporation ("**Home Point**" or collectively, "**Defendants**") state and allege as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by the plaintiff, David Nappier, arising out of the defendants' failure to pay overtime pay pursuant to the Fair Labor Standards Act (FLSA). Nappier was hired in July 2014 as a non-exempt retail mortgage advisor by Stonegate.

In 2017, Defendant Home Point Financial Corporation completed an acquisition of Stonegate Mortgage Corporation, as announced in public filings. Stonegate has become a wholly-owned subsidiary of Home Point and is now operating under the Home Point name which establishes continuity of Stonegate's business. As set forth herein, Home Point is a successor employer of Plaintiff pursuant to federal common law to effectuate the goals and

1

policies of the Fair Labor Standards Act.

Plaintiff brings this action against the defendants to redress violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), seeking overtime pay damages, liquidated damages, a finding of willful violation of the FLSA, along with attorney fees and costs.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the causes of action asserted herein under 29 U.S.C. § 216(b) and by 28 U.S.C. § 1331 (federal question jurisdiction).

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the defendants can be found within this judicial district and a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

4. Plaintiff was first hired by Stonegate in July 2014 as a retail mortgage advisor. His offer of employment letter specifically stated that he was eligible for overtime pay. Subsequent communications with Stonegate confirmed that Plaintiff was a non-exempt employee for purposes of the FLSA. Plaintiff's main office was located in St. Louis County, Missouri, which is within the Eastern District of this Court. At all relevant times, Stonegate controlled the nature and quality of Plaintiff's work by written and verbal instructions to Plaintiff; Stonegate exercised its right to hire or fire retail mortgage advisors; and Stonegate was the source of compensation for Plaintiff's work as a retail mortgage advisor.

5. Defendant Stonegate Mortgage Corporation, at all relevant times during Plaintiff's employment, was a non-bank mortgage company focused on originating, financing and servicing U.S. residential mortgage loans. At all times relevant times, Stonegate was authorized to do business in the State of Missouri, including in St. Louis County.

6. Defendant Home Point Financial Corporation is a foreign corporation that does business in the State of Missouri and in the Eastern District of Missouri. At all relevant times, Home Point purposely transacted business in the business of originating, financing and servicing U.S. residential mortgage loans in the State of Missouri and is subject to personal jurisdiction in this Court.

7. At all relevant times herein, during and after Plaintiff's employment with Stonegate, both defendants engaged in interstate commerce with an annual volume of sales of not less than $500,000.

8. At all times relevant times to this action, Defendant Stonegate was an employer of Plaintiff within the meaning of 29 U.S.C. § 203(d) and is an "enterprise" engaged in commerce as defined in 29 U.S.C. § 203(r), 203(s).

9. At all times relevant times to this action, Defendant Home Point is the successor employer of Plaintiff within the meaning of 29 U.S.C. § 203(d) and is an "enterprise" engaged in commerce as defined in 29 U.S.C. § 203(r), 203(s).

## COMMON ALLEGATIONS OF FACT

10. On or about January 6, 2017, Plaintiff Nappier made a written complaint about failure to receive overtime pay compensation while an employee of Stonegate, sent to Iris Hayden, a Human Resources contact with Stonegate Mortgage.

11. Plaintiff Nappier also sent a copy of his written complaint about failure to receive overtime pay compensation to Jim Smith, then Chief Executive Officer of Stonegate Mortgage.

12. In a follow-up email, Ms. Hayden forwarded Plaintiff's complaint about failure to pay overtime compensation to other individuals including Jim Smith of Stonegate Mortgage and Britt Griffin of Stonegate Mortgage.

13. Subsequently, Plaintiff Nappier was contacted by an individual who identified himself as an attorney for Stonegate Mortgage, that being David Kress, who acknowledged that Stonegate had received Plaintiff's complaint about failure to receive overtime pay. Stonegate failed to respond and pay overtime pay amounts due to Plaintiff.

14. In January 2017, Defendant Home Point Financial announced the impending acquisition of Stonegate Mortgage. The acquisition was completed on or about May 31, 2017.

15. In June 2017, Home Point Financial shuffled its executive team. Jim Smith, formerly CEO of Stonegate, is now the Chief Executive Officer for Home Point Financial. Furthermore, in June 2017, David Kress also became an employee of Home Point Financial. Thus, these management moves indicate a continuity of business between Stonegate Mortgage and Home Point. In addition, this establishes that Home Point had constructive notice of Plaintiff's complaint that he was not paid overtime under the FLSA since both Smith and Kress had notice and then immediately resigned their positions with Stonegate and became employees of Home Point with no break in service.

16. The continuity of business between Stonegate and Home Point is further established because former Stonegate Mortgage executives including Steve Landes, David Dill and Doug Gilmore, have assumed senior leadership roles at Home Point.

17. In its St. Louis offices, Home Point Financial continued to operate the same business involved with retail mortgages using the same individuals who were employed by Stonegate Mortgage.

18. In July 2017, by entering a Google search for www.stonegatemrg.com, the electronic result includes a banner which states:   Stonegate Mortgage and Stonegate Direct are now Home Point Financial.  This also demonstrates a continuity of the same business between

the two defendants and that Home Point has continued Stonegate's retail mortgage business as a successor employer.

19. Further, this same website states: Are you a Homeowner with a Stonegate loan? The response provided on another page of the web site states: Earlier this year, Stonegate Mortgage Corporation[TM] issued a joint press release with Home Point Financial[TM] announcing that our two companies entered into a definitive merger agreement. By joining together, we will continue to provide an industry-leading customer experience. We anticipate that this transaction will close by the end of the second quarter of 2017. You will receive additional follow-up communications regarding the pending transaction. *Your loan is not transferring to a new servicer in this transaction, but our name will change to Home Point Financial[TM] after completion of the transaction.*" (Emphasis added.) This also demonstrates a continuity of the same business between the two defendants and that Home Point has continued Stonegate's retail mortgage business as a successor employer.

20. Essentially all facets of Stonegate's retail mortgage business at issue, including operations, staffing, office space, email addresses, employment conditions, and work in progress, remained the same after intercession of Home Point, as a successor employer.

21. Since it appears that while Stonegate Mortgage is no longer listed as a public stock, yet it still has a board of directors, most of which are also employees of Home Point, this demonstrates inter-relationship of management and control.

22. Thus, at all relevant times, Home Point Financial had constructive knowledge of Plaintiff's FLSA complaint on failure to pay overtime since it was provided in January 2017 both to a Chief Executive Officer and General Counsel of Stonegate, both who then subsequently became employees of Home Point Financial in June 2017. Further, Stonegate Mortgage is no

5

longer listed on the active stock exchange as an on-going entity and therefore does not provide a source for remedy of this FLSA violation.

23. However, because Home Point Financial operates offices in the St. Louis, Missouri area, it ought to bear responsibility for the conduct of Stonegate Mortgage, its predecessor.

## COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938

24. Plaintiff hereby adopts by reference the allegations contained in Paragraph 1 to 23 of his Complaint as Paragraph 24 of Count I.

25. On or about September 2014, Plaintiff signed an employment agreement with Stonegate Mortgage Corporation which said he was eligible to receive overtime pay.

26. Plaintiff executed a second employment agreement on or about March 15, 2015 in which again it was noted that he was eligible to receive overtime.

27. Once Plaintiff began his employment as a Mortgage Officer, he was specifically instructed by his supervisor to not record any overtime hours because Stonegate was not going to pay overtime even if it were obligated to do so. Thus, under the threat of losing his job, Plaintiff did not record overtime hours.

28. There were numerous occasions in which management of Stonegate instructed Plaintiff not to record any overtime hours because Stonegate management stated that even if Plaintiff worked the overtime hours, he was not going to be paid any overtime.

29. At all relevant times herein, Plaintiff was required by the defendants to work in excess of 40 hours in a given work week from, when he started in 2014 until he left Stonegate in 2016, and Plaintiff did work on average 60 hours per work week in this time period. Plaintiff regularly met with customers and potential customers throughout the day and evening; the

Plaintiff performed sales, loan origination work, marketing and business development, and transactional and processing duties as retail mortgage advisor at his home and outside locations in the evenings and on weekends.  Thus, Plaintiff worked in excess of 40 hours in all his work weeks while employed by Stonegate Mortgage.  At all times, the defendants were aware that the Plaintiff was working in excess of 40 hours in a given workweek during his employment because Plaintiff's supervisor would engage in email communications with him throughout evening hours; Plaintiff's supervisor instructed Plaintiff to work on the weekends and the defendants accepted the benefits of these extra hours of work beyond 40 hours in a given work week.

30. At all relevant times hereto, Plaintiff has been entitled to the rights, protections and benefits provided under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. ("FLSA").

31. The FLSA requires employers to pay employees (1) for hours worked and (2) overtime rates for those who work more than forty hours in a work-week.  29 U.S.C. §§ 206-07.

32. At all relevant times hereto, Stonegate and Home Point were the "employer" of Plaintiff within the meaning of the FLSA.  29 U.S.C. § 203(d).

33. At all relevant times hereto, Plaintiff was Stonegate and Home Point's "employee" within the meaning of the FLSA.  29 U.S.C. § 203(e).

34. By its acts and omissions outlined hereinabove, the defendants violated the FLSA by failing to pay for overtime hours worked by Plaintiff.

35. Plaintiff is entitled to damages of the applicable overtime premium pay within the three (3) years preceding Plaintiff's filing of his Complaint, plus periods of equitable tolling.  By the acts and omissions described hereinabove, the defendants acted willfully and knew, or showed reckless disregard for whether, its conduct as set forth herein was prohibited by the FLSA.

36. The defendants have not acted in good faith or with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA because they designated that Plaintiff was a non-exempt employee, yet failed to pay him for overtime hours worked, and as a result thereof, Plaintiff is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay permitted by 29 U.S.C. § 216(b).

37. As a result of the defendants' willful violations of the FLSA's overtime pay requirements as set forth herein, compensation for overtime has been unlawfully withheld by the defendants from Plaintiff.  By the acts and omissions described hereinabove, including but not limited to that the offer of employment letter clearly stated that Plaintiff was eligible for overtime, yet when he started working, his direct supervisor said not to record overtime hours because the company wasn't going to pay overtime even if Plaintiff worked in excess of 40 hours per week, the defendants acted willfully and knew, or showed reckless disregard for whether its conduct as set forth herein was prohibited by the FLSA.  Even though the defendants knew and recognized that the Plaintiff worked over 40 hours a week to receive overtime pay, the defendant openly flouted that they would not comply with the FLSA.  Accordingly, the defendants are liable under 29 U.S.C. § 216(b) together with an additional amount withheld as liquidated damages, pre- and post-judgment interest, reasonable attorney fees and costs of this action.

38. Plaintiff has been forced to incur attorney fees and costs to bring forth his claim for unpaid overtime in violation of the FLSA.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor as to Count I and further seek (1) compensatory damages, (2) liquidated damages, (3) attorney fees and costs as allowed by Section 216(b) of the FLSA, (4) pre- and post-judgment interest as

8

provided by law, and (5) all other and further relief as this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Respectfully submitted,

**WEISS ATTORNEYS AT LAW, P.C.**

By: /s/ *James G. Nowogrocki*
James G. Nowogrocki, #38559MO
1015 Locust Street, Suite 400
St. Louis, Missouri 63101
Phone: (314) 588-9500
Facsimile: (314) 588-9595
Email: jnowogrocki@weisslawstl.com


By: /s/ *Morgan L. Taylor*
Morgan L. Taylor, #67750MO
1015 Locust Street, Suite 400
St. Louis, Missouri 63101
Phone: (314) 588-9500
Facsimile: (314) 588-9595
Email: mtaylor@weisslawstl.com

*Attorneys for Plaintiff*

E:\CLIENTS\NappierD.7-3125.01\Complaint.docx